Dear Representative Feigenbaum:
This opinion letter is in response to your request for an opinion concerning the relative roles of state government and the federal government with respect to transportation of radioactive materials including nuclear reactor wastes. Your opinion request states your question as follows:
 The federal government exercises general preemption over state and local governments in the regulation of transportation of radioactive materials and waste. The authority to do so is contained in the interstate commerce clause, the Atomic Energy Act of 1954, the Energy Reorganization Act of 1974, and the Hazardous Materials Transportation Act. State and local governments are given primary responsibility for emergency response to radioactive materials transportation accidents. In keeping within this responsibility, in what specific areas are the state and local governments allowed to impose requirements and restrictions on the transportation of radioactive materials without being in conflict with federal preemption provisions?
As will be explored a bit further in this opinion, the answers to some of the areas where the states may or may not be able to exercise authority result from Department of Transportation (DOT) Inconsistency Rulings (IR), federal constitution and statutes, regulations and case law. Much of the opinion is based necessarily on the inconsistency rulings, which are given considerable weight by the courts, but are only advisory in nature, and thus would not have the weight of case law unless incorporated into court opinions.
Certain federal statutes involved in this opinion include the Atomic Energy Act of 1954, 42 U.S.C. § 2011, et seq.
(AEA); the Hazardous Materials Transportation Act, 49 U.S.C. § 1801,et seq. (HMTA); the Energy Reorganization Act of 1974 which established the Nuclear Regulatory Commission, 42 U.S.C. § 5841,et seq.; and the Federal Railroad Safety Act, 45 U.S.C. § 431,et seq. Based in part on these statutes, there are three primary doctrines which establish the invalidity of certain state efforts to control the transportation of nuclear wastes and materials. These include preemption by federal law, interference with interstate commerce and federal immunity in certain areas.
Concerning preemption, it has been determined that under the AEA the federal government has occupied the entire field of nuclear safety so that most state efforts toward nuclear safety are preempted. The Supreme Court sets forth the preemption doctrine as follows:
 As we recently observed in Pacific Gas Electric Co. v. State Energy Resources Conservation Development Comm'n, 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983), state law can be preempted in either of two general ways. If Congress evidences an intent to occupy a given field, any state law falling within that field is pre-empted. Id., at 203-204, 103 S.Ct., at 1721-1722; Fidelity Federal Savings Loan Assn. v. De la Cuesta, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982); Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447
(1947). If Congress has not entirely displaced state regulation over the matter in question, state law is still pre-empted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law, Florida Lime Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143, 83 S.Ct. 1210, 1217-1218, 10 L.Ed.2d 248 (1963), or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress, Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). Pacific Gas Electric, supra, at 203-204, 103 S.Ct. at 1721-1722. Kerr-McGee contends that the award in this case is invalid under either analysis. We consider each of these contentions in turn.
 In Pacific Gas Electric, an examination of the statutory scheme and legislative history of the Atomic Energy Act convinced us that "Congress . . . intended that the Federal Government should regulate the radiological safety aspects involved in the construction and operation of a nuclear plant." 461 U.S., at 205, 103 S.Ct., at 1723. Thus, we concluded that "the Federal Government has occupied the entire field of nuclear safety concerns, except the limited powers expressly ceded to the States." Id., at 212, 103 S.Ct. at 1726.
 Silkwood v. Kerr-McGee Corporation, 464 U.S. 238, 248-249, 104 S.Ct. 615, 621-622, 78 L.Ed.2d 443, 452-453 (1984).
Thus, where state requirements in the area of nuclear plant regulation are motivated by safety concerns, the Supreme Court has stated that the first method of preemption applies, a completely occupied field with which any state law is preempted. It seems likely this would also apply in the area of transportation. However, despite this complete occupancy of the field of nuclear safety, state controls which concentrate on other areas may succeed. The state of California successfully regulated development of nuclear power plants for economic reasons which were determined by the court in Pacific Gas Electric Co. to be separate and apart from nuclear concerns, therefore a valid basis for state regulation. Such other regulation is very narrow, however, in view of the federal occupancy of the entire field of nuclear safety based on the AEA. It would seem difficult to apply this approach to deal with safety in the area of radioactive materials transportation.
Attachment A taken from a report prepared for the Department of Energy, sets forth an analysis of the status of preemption under the Atomic Energy Act. While the analysis indicates that preemption of state transportation by AEA has not yet been decided in any cases, holdings in other areas of radioactive materials safety issues do indicate transportation safety controls by states would be preempted.
In the second category of preemption in Silkwood, the Hazardous Materials Transportation Act preempts any state regulations that are inconsistent in that they conflict with that act or regulations pursuant to the act.
State laws inconsistent with federal laws in the field of nuclear materials and thus preempted, are preempted because of the Supremacy Clause in the United States Constitution. The Supremacy Clause generally provides that federal law is the supreme law of the land, and the preemption doctrine is a result of the application of this clause. Jersey Central Power Light Company v. Township of Lacey, 772 F.2d 1103, 1110 (3rd Cir. 1985).
The Commerce Clause of the United States Constitution is another basis for precluding state action, in that it prohibits any undue burden on commerce which might be imposed by state regulation on shipment of radioactive wastes or materials.
For the Commerce Clause to preclude state regulation of transportation of radioactive materials and wastes, it must be determined that the federal law at issue is valid and that the state law interferes with the federal scheme either expressly, by implication or by actual or potential conflict between the federal and state provisions. The implied interference may be found by the pervasiveness of the federal regulatory scheme, the dominance of the federal interest, including an interest in uniformity across the nation, or thirdly interference with federal purposes.
The Commerce Clause is thus not an absolute prohibition, but requires a balancing of the burden imposed on interstate commerce with the benefits the law would afford the state to determine whether there is such a burden on interstate commerce unjustified by benefits to a state that it would invalidate the state law.
The Hazardous Materials Transportation Act is a major source of preemption of state regulations concerning hazardous, including radioactive materials. The express preemption contained in the Hazardous Materials Transportation Act (HMTA) provides that a state requirement that is inconsistent with the HMTA or regulations thereunder is preempted unless the Secretary of Transportation grants a waiver of preemption. 49 U.S.C. § 1811. The federal regulation to determine if there is preemption due to the Hazardous Materials Transportation Act requires the Department of Transportation to consider whether compliance with both state and federal law is possible, and the extent to which the state requirement is an obstacle to accomplishing the purposes of the HMTA and regulations thereunder, the HMRs.
As stated in a Department of Transportation (DOT) Inconsistency Ruling, IR-2, the manifest purpose of the Hazardous Materials Transportation Act and the hazardous materials regulations is safety in transportation. The Department of Transportation has determined that any delay in transportation is incongruous with safety, and therefore any state requirements which cause delay are deemed inconsistent. The Department of Transportation requirements for radioactive materials apply to source, by-product and special nuclear materials. These are categories of radioactive substances and do include spent fuel from nuclear power plants.
Under the Hazardous Materials Transportation Act, radioactive materials are treated as a subset of hazardous materials in 49 C.F.R. and thus subject to hazardous materials rules generally, as well as those pertaining to radioactive materials.
In some areas any state requirements are likely to be determined an obstacle to operation of HMTA, because the Department of Transportation has also determined that these areas need national uniformity. They include hazardous material packaging standards, hazardous material warning systems and hazardous material class definitions. IR-6, 47 Fed. Reg. at 51,994.
Because of the overwhelming number of rulings finding that state requirements are inconsistent, and thus preempted, the Department of Transportation's regulation, HM-164, Appendix A to 177, 49 C.F.R. has proved to be generally offensive to most states and has been challenged by several states, but so far unsuccessfully.
One analysis has determined that in light of IRs 8, 10, 11, 12, 13 and 15, based largely on the Hazardous Materials Transportation Act and the hazardous materials regulations thereunder, it must be concluded that the federal government almost completely occupies the field of radioactive material transportation safety, and therefore state requirements dealing with this field are generally limited to only:
1. General traffic control for all traffic.
2. Designation of alternate preferred routes if the requirements of 49 C.F.R. 177.825 (Attachment B) are met. (Copy of DOT advisory to states on how to exercise authority over carriers of hazardous materials consistently with federal requirements attached as Attachment C.)
3. Adoption of federal requirements, or requirements that are consistent with federal requirements.
4. Enforcement of requirements that are consistent with federal requirements.
The major part of the answer to your question must be based on the inconsistency rulings mentioned above, in which the Department of Transportation has considered particular state requirements, and determined whether they are inconsistent with federal requirements, and therefore preempted. As mentioned above, these DOT Rulings, are only advisory in nature, but are given considerable weight by the courts. There is a procedure for a state to request waiver of preemption after its requirement has been deemed inconsistent in one of the inconsistency rulings. However, so far there has been little success by the states with these waivers. The Department of Transportation's position is explained by its policy that non-preemption is meant to be an extraordinary remedy in the field of nuclear waste and materials transportation. Attachment D lists the Inconsistency Rulings through June 1986. Attachment E lists the subject matter of Inconsistency Rulings.
A state applying for a waiver of preemption must (1) make a threshold showing of exceptional circumstances necessitating immediate action for a state to secure more stringent regulation; (2) show that the preempted state requirement affords an equal or greater level of protection to the public as compared with federal requirements; and (3) show that the preempted state requirement does not unreasonably burden commerce.
Some confusion in what state actions are preempted results from the fact that there is regulation by more than one federal agency. Generally, the Nuclear Regulatory Commission regulates the possession, transfer, construction and operation of production and utilization facilities for source, by-product and special nuclear material, including nuclear power plants. However, because of a Department of Transportation regulation declaring the above three materials as hazardous materials, they are also subject to Department of Transportation requirements generally pertaining to (1) physical security during transportation and, (2) controlling preparation and packaging of radioactive materials for transportation. Because of this overlap, the NRC and the Department of Transportation have executed a memorandum of understanding (44 Fed. Reg. 38,690) which gives DOT responsibility for setting the design specifications and performance requirements for those materials for which NRC does not set standards. Under this, DOT sets packaging standards for LSA materials and for quantities of non-fissile materials not exceeding type A limits. Pursuant to the memorandum of understanding, DOT also develops standards for (1) the classification of radioactive materials; (2) the external radiation fields, labeling and marking of packages and vehicles; (3) carrier equipment; (4) carrier personnel qualifications; (5) loading, handling and storage procedures; (6) non safeguards — related special transport controls; and (7) all other safety standards not developed by the NRC.
State activities and regulations inconsistent with any of DOT's actions would almost certainly be determined to be inconsistent by DOT should they go to inconsistency rulings, and therefore should be considered preempted. It should also be borne in mind that even if a state requirement satisfies the DOT consistency criteria, it must still be measured against the complete federal occupancy of the field of radioactive safety under the AEA referred to in Silkwood, supra, which is an independent basis for preemption.
With this as background, the following paragraphs deal with particular activities and whether they are preempted or otherwise precluded from state regulation.
Requirements concerning approval of shipments are inconsistent if they differ in any way from the federal requirements but are okay if identical to those requirements. Inconsistency Rulings (IRs) 8, 11, 12, 13, 14 and 15.
State requirements concerning the design for radioactive waste and materials casks are preempted if in any way inconsistent with the federal requirements. IR-8.
State regulations concerning confidentiality of information relating to radioactive waste and materials transportation are preempted if they differ from federal requirements. IRs 8 and 15.
Any state regulations concerning the construction and operation of nuclear plants are preempted by federal laws. Atomic Energy Act of 1954, 42 U.S.C. § 2131. However, as noted above the state of California was successful in its regulation of the construction of a nuclear power plant based on economic factors rather than nuclear safety factors.
State courts are not barred from awarding compensatory damage judgments in the case of nuclear accidents, even though it may be argued that this amounts to regulation resulting from state laws. Silkwood v. Kerr-McGee Corporation, supra.
Definitions concerning radioactive materials are inconsistent if they differ from federal definitions, and therefore would probably be considered preempted. IRs 8, 12, 15 and 16.
State and local governments have been handed the major burden for preparation of emergency response plans and emergency response. However, state requirements that an emergency response plans be considered a condition of route approval has been found to be inconsistent because the DOT's Materials Transportation Bureau found this would constitute an obstacle to accomplishing the intent of the Hazardous Materials Transportation Act. The Department of Transportation has a program to help states with enforcement of federal regulations, under its "State Hazardous Materials Enforcement Development" program.
State fines or civil penalties are inconsistent and therefore preempted if they are based on violations of state rules which are different from federal rules. IR-3.
There is a qualification on penalties and fines, however. Even if they are for violations of consistent state rules, they would be determined inconsistent if they are so extreme or arbitrary as to cause rerouting or delay of shipments, though mere differences in amounts do not generally determine inconsistency. IR-3.
State requirements for front and rear mobile escorts if identical to those required by the NRC for radioactive materials are consistent. IR-14. Clearly, any requirements for escorts in addition to those required under federal law are inconsistent. IRs 11 and 13; 49 C.F.R. 177.
Any state fees which may cause a delay in shipment are generally preempted. IR-17. Fees which are unreasonably high or to fund inconsistent state activities such as inconsistent monitoring activity requirements are inconsistent and preempted. IRs 11, 13 and 15. Reasonable fees to fund consistent activities are consistent and not preempted. Therefore it has been found that a $1,000.00 per cask fee for spent fuel transportation imposed by the state of Illinois for emergency response purposes, not related to inconsistent purposes and which do not cause delay, is consistent and not preempted. IR-17.
Local prohibitions on the import of nuclear wastes and materials are preempted as inconsistent. Jersey Central Power Light Company v. Township of Lacey, supra.
Inspection, monitoring and surveillance requirements which are related to nuclear safety concerns are preempted if they are inconsistent with federal requirements. State inspection requirements are permitted so long as they are consistent with federal requirements. IRs 2, 8, and 15. The state of Illinois rail shipment inspection program adopted unchanged the applicable provisions of the federal inspection requirements from 49 C.F.R.
State requirements which differ from federal insurance or liability requirements or require additional insurance coverage beyond that required by federal requirements are inconsistent and preempted. IR-11.
State requirements for marking, placarding or labeling trucks are inconsistent if different or in addition to federal requirements, and are therefore preempted. Kappelmann v.Delta Air Lines, Inc, 539 F.2d 165 (D.C. Cir. 1976) cert.denied, 429 U.S. 1061, 97 S.Ct. 784 (1977); National TankTruck Carriers, Inc. v. City of New York, 677 F.2d 270, 274
(2nd Cir. 1982).
State requirements for packaging standards for design and construction are inconsistent and thus preempted if they differ from or add to federal requirements. IR-2. And, state requirements for radioactive materials container testing and certification are inconsistent. IRs 8 and 15.
State requirements for permits and licenses are preempted depending upon what they require, particularly if they are the cause of delay in shipment. IRs 2 and 3. State requirements for submission of information in applications identical to NRC's are consistent, but requirements by a state for submission of NRC approvals and licenses to the state is inconsistent. IR-15. While there is some possibility that mere requirements in permit applications for information already required on Department of Transportation shipping papers may not be preempted, it is considered that requirements for permits for each shipment prior to the shipment or a requirement for carrying the permits on the vehicle or an additional piece of paper that supplies the same information as required by the Department of Transportation shipping papers, probably would cause delay and therefore would be inconsistent. IR-2. There is also some possibility that general permits and licenses may be okay or that if the permit system is consistent with federal requirements, that a state requirement to carry and display a decal is consistent. IR-3. However, there also is authority stating that the requirement to display a permit decal has been held to be inconsistent. For a detailed discussion of the permit issue, see National Tank Truck Carriers, Inc. v. Burke,535 F. Supp. 509 at 517 (D.R.I. 1982), aff'd 698 F.2d 559 (1st Cir. 1983).
Generally, DOT considers that requirements for additional personnel or equipment for nuclear materials or waste transportation are inconsistent and thus preempted. See Attachment C, the DOT Guidelines for state authority over motor carriers.
State requirements for illuminated rear bumper signs have been found inconsistent. IR-1. It does appear, however, that a requirement that headlights be kept on is consistent and therefore not preempted. National Tank Truck Carriers, Inc. v.Burke, supra. IRs 2 and 3.
State requirements for special placards on trucks or other hazard warning requirements are inconsistent if they differ from or are in addition to federal requirements. IRs 2 and 3.
Generally, state requirements for prenotification of shipments have been found to be inconsistent, in particular if they have the potential to delay traffic. IR-6. Where they differ from federal requirements by requiring different people to be notified or more information or documentation, they are inconsistent. IRs 8, 10 and 15. State prenotification requirement the same as the federal requirement is consistent. IR-15. Notice requirements for radioactive materials shipment schedule changes which are identical to NRC regulations are considered consistent. IR-8.
There is a general prohibition on state records and manifest requirements if they differ at all or require anything in addition to federal requirements for entries on the forms. See Attachment C. Specifically, requirements for information or documentation in excess of federal requirements are believed to create additional burden or delay and are therefore inconsistent. Radioactive materials transportation route plans or other documents with shipment-specific information required by the state have been found inconsistent. State requirements for submission of NRC approvals and licenses to the state have been found inconsistent by DOT. IR-15.
State requirements for shipping papers or additional or different shipping paper entries for radioactive materials than required by federal law have been considered inconsistent by DOT. See Attachment C. A state requirement for red bordered shipping papers for intrastate shipments of hazardous materials has been considered inconsistent. IR-4. A state requirement for certification to the state of the shipment's compliance with federal laws are considered inconsistent. IRs 8 and 15. While radioactive materials information requirements identical to the Nuclear Regulatory Commission are consistent, requirements to submit NRC approvals and licenses to the state are inconsistent. IR-15.
State requirements for registration are preempted by the Atomic Energy Act if related to nuclear safety and if they cause delay in shipment are probably preempted by the HMTA.
Some state requirements in area of accident and emergency response or reports are probably not preempted by AEA or HMTA. However, a state requirement for a written accident report has been considered redundant and thus inconsistent by DOT. IRs 2 and 3. Radioactive materials transportation accident/incident state reporting requirements for other than emergency assistance are inconsistent. Some limited accident reports are permitted under 49 C.F.R. 177 if necessary for emergency assistance.National Tank Truck Carriers, Inc. v. Burke, supra.
Apparently general post-accident traffic accident reports are alright and immediate oral accident reports for emergency response are not inconsistent. IRs 2 and 3.
Concerning state routing requirements, the Department of Transportation has an advisory to states concerning how they can exercise authority over motor carriers. A copy is attached as Attachment C. In general, however, state routing restrictions are preempted by HMTA under HM-164, unless they are part of a state-designated alternate route selected with appropriate safety analysis.
Closely connected with routing restrictions are complete denial of highway use. A state cannot deny all highway use for shipments of radioactive materials and wastes. IR-3.
State requirements for storage, loading and handling procedures are in all probability preempted by the Atomic Energy Act if they are an attempt to regulate safety. Silkwood v.Kerr-McGee Corporation, supra.
Some time of day restrictions have been found to be consistent, others inconsistent. Statewide prohibition on all hazardous materials transport on weekdays between 7 and 9 a.m. and 4 and 6 p.m. resulted in delay and so was found inconsistent. IR-2. See also National Tank Truck Carriers,Inc. v. Burke, supra. But see National Tank Truck Carriers,Inc. v. City of New York, supra. Restriction of radioactive materials shipments from May through October and prohibition of holiday or inclement weather shipments were found inconsistent. IR-14. However, limited local traffic controls are generally consistent to the extent they deal with particular local safety hazards which are not adequately dealt with by nationwide regulations. IR-2. This includes local authority to restrict or suspend operations when road, weather, traffic or other hazardous conditions or circumstances dictate.
So called "rules of the road" restrictions that apply to all vehicles may apply to hazardous materials vehicles without being inconsistent. IR-3. Separation distances between vehicles is an example. Requiring carriers to use major city thoroughfares so long as federal rules apply elsewhere is consistent. IR-3.
State requirements for railroad cars containing hazardous materials, prohibiting various actions have been found inconsistent and preempted by the Hazardous Materials Transportation Act. These actions include a prohibition on cutting off cars while in motion, permitting hazardous material containing cars from being struck by other cars moving under their own momentum, or coupling cars with unnecessary force.Atchison, Topeka and Santa Fe Railway Company v. IllinoisCommerce Commission, 453 F. Supp. 920 (N.D. Ill. 1977).
A review of federal government regulations in the field as of November, 1985 is contained in Attachment F from the Guide to Emergency Response to Radioactive Materials Analysis published by the National Conference of Legislatures, pages 4 and 5.
The above discussion pertains primarily to highway shipments of radioactive materials and, where applicable, would also apply to railroad shipments. Where railroad shipments are involved, another federal statute which must be considered is the Federal Railroad Safety Act, 45 U.S.C. § 421 et seq. In particular § 434 provides:
 The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.
Under this act, which must be considered in conjunction with the other federal statutes, a state's attempt to regulate rail shipments of radioactive materials must be considered in light of what federal regulations have been adopted that would trigger the preemption provided for in § 434. National Associationof Regulatory Utility Commissioners v. Coleman, 542 F.2d 11
(3rd Cir. 1976). If regulations on the federal level have been adopted, then the state safety measures may still be exempted under the second exemption in § 434, if the state regulation meets § 434 requirements that it is necessary to eliminate or reduce a local safety hazard and further is not incompatible with any federal measures and does not unduly burden interstate commerce. Donelon v. New Orleans TerminalCompany, 474 F.2d 1108 (5th Cir. 1973).
Federal transportation regulations have been adopted and are found interspersed throughout 49 C.F.R. parts 100 to 199. State measures consistent with these 49 C.F.R. requirements are apparently not preempted by the federal railroad safety law.
Because of the breadth of material covered in this opinion and the length and complexity of 49 C.F.R., any specific Missouri requirements you might wish to consider should be individually evaluated.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General
Enclosures
ATTACHMENT A
Federal Preemption of State and Local Nuclear Transportation Regulations
Thomas D. Overcast, J.D., Ph.D. Barbara Schuknecht, J.D.
Battelle Human Affairs Research Centers Science and Government Study Center 4000 N.E. 41st Street Seattle, Washington 98105
January 1985
 Prepared for Sandia National Laboratories TRANSPORTATION TECHNOLOGY CENTER for the U.S. Department of Energy
to establish many of the packaging standards for which the NRC is
responsible — enriched uranium hexafluoride, enriched uranium oxide, fuel pellets or rods, and spent fuel — because as typically shipped they constitute "SNM in quantities sufficient to form a critical mass".
When NRC does relinquish authority pursuant to an agreement with a state, during the period of the agreement the state has "authority to regulate the materials covered by the agreement for the protection of the public health and safety from radiation hazards." The NRC may not, however, discontinue regulatory authority over construction and operation of production and utilization facilities; export or import of nuclear materials or facilities; ocean disposal of nuclear wastes; or the disposal of other source, byproduct, or special nuclear materials that NRC determines should require a license. NRC must also retain authority under these agreements to determine that all applicable standards and requirements are met prior to termination of a byproduct materials license. Moreover, notwithstanding an existing agreement between NRC and a state, NRC is authorized to require that the manufacturer, processor, or producer of any product containing source, byproduct or SNM not transfer possession or control of such product except pursuant to a license issued by the NRC. The NRC's retention of authority in these areas does not, however, affect the authority of states or localities "to regulate activities for purposes other than protection against radiation hazards," whether or not they are agreement states.
Preemption Under the Atomic Energy Act
To date, no reported judicial opinion has analyzed the issue of the extent to which the Atomic Energy Act (AEA) preempts state and local regulation of nuclear transportation. However, one Court of Appeals (Illinois v. General Electric Company) has commented on the issue and two recent Supreme Court cases (Pacific Gas and Electric Company v. StateEnergy Resources Conservation Commission (PGE); Silkwood v. Kerr-McGee) have dealt exhaustively with the preemptive effect of the AEA on state and local regulation of various aspects of nuclear power reactors. These analyses merit scrutiny for their implications for preemption of transportation regulation.
In Pacific Gas and Electric Company v. State Energy ResourcesConservation and Development Commission (PGE), the United States Supreme Court considered whether a California statute conditioning construction of nuclear plants on existence of a federally approved means of disposing of high level nuclear waste was preempted by the AEA. After reviewing the history of the AEA, the Court held that the California statute was not preempted. The Court noted that the NRC's "prime area of concern in the licensing context . . . is national security, public health and safety." Because California enacted the statute for economic reasons rather than due to safety concerns, the statute lay "outside the occupied field of nuclear safety regulation."
In reaching its holding, the Supreme Court made two observations important for future AEA preemption analysis. First, it determined that the Federal Government has occupied "the entire field of nuclear safety concerns except for the powers expressly ceded to the states." It then reiterated that the test for preemption in an entirely occupied field is whether "the matter is in any way regulated by the federal government." Thus, any state regulation determined to be an attempt to regulate the safety aspects of nuclear energy will be preempted.
Second, the Court rejected the argument that the reorganization of the AEC in 1974 translated into an abandonment of the objective of promoting nuclear power. Instead, it concluded that "[t]here is little doubt that a primary purpose of the Atomic Energy Act was, and continues to be, the promotion of nuclear power." Arguably then, state and local regulations that conflict with the promotional purposes of the AEA will be preempted under the potential conflict test discussed previously.
It appears, however, that the Supreme Court, under Chief Justice Warren Burger, will be reluctant to find potential conflict with the AEA's promotional provisions. Although the Court could have accepted PGE's argument that the California statute, which in effect accomplished a moratorium on future nuclear power plant development, frustrated the purposes of the AEA, it declined to do so. Instead, it noted that "the promotion of nuclear power is not to be accomplished "at all costs" and concluded that "Congress has left sufficient authority for the states to allow the development of nuclear power to be slowed or even stopped for economic reasons."
The Supreme Court also refused to find conflict with the promotional purposes of the AEA in Silkwood vs. Kerr-McGee Corporation. At issue in Silkwood was whether a state authorized award of punitive damages arising from leakage at a federally licensed plutonium processing plant was preempted by the AEA. Kerr-McGee first argued that the award was preempted because its effect was tantamount to a regulation relating to radiation hazards. Although the Court recognized the potential regulatory consequences of the award, it reasoned that "it is difficult to believe Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct."
Kerr-McGee also raised the argument that permitting awards of punitive damages for radiation injury conflicted with the promotional purposes of the AEA. Again, the Supreme Court refused to find preemption on this basis. Repeating its admonition in PGE that the promotion of nuclear energy development is not to be accomplished at all costs, the Court supported its decision by noting that the promotional provision of the AEA, requires that atomic energy be developed and utilized only to the extent it is consistent "with the health and safety of the public." The Supreme Court reasoned that this provision disclaimed any congressional intent to promote atomic energy at the expense of those injured by the process. Absent Congressional intent to preempt state common law remedies for radiation injuries, and absent an irreconcilable conflict with the federal regulatory scheme, the Silkwood court upheld the award of damages.
While neither PGE nor Silkwood dealt specifically with nuclear waste transportation regulations, that issue was before a Federal Court of Appeals in Illinois v. General Electric Company. That case involved a challenge to the constitutionality of the Illinois Spent Fuel Act, which prohibited disposal or storage in Illinois of spent nuclear fuel used in a power generating facility located outside the state. The court found that Illinois' attempted regulation was an unconstitutional burden on interstate commerce. More important for our purposes was the court's alternative holding, made to assist the Supreme Court should it grant review of the case. Although the alternative holding has no precedential effect, the court did note, without analysis, that the "AEA . . . preempts state regulation of the storage and shipment for storage, interstate and intrastate alike, of spent nuclear fuel."
Taken together, PGE and Silkwood (and to a limited extent, Illinoisv. General Electric Company) provide a framework for the analysis of implied AEA preemption issues, including the state and local regulation of nuclear waste transport. The primary question the court will address is whether the state or local requirement is an attempt to regulate nuclear safety. As in any characterization question, the outcome of such an inquiry depends in part upon how deeply the court will inquire into legislative motive. In PGE, the Supreme Court indicated that it would be reluctant to look beyond the stated purposes of the California law and would accept the interpretation made by the Court of Appeals. However, this same "hands off" approach may not be adopted by the lower courts. For example, in one recent case (County of Suffolk v. Long IslandLighting Company) the Court of Appeals for the Second Circuit decided that certain claims arising from alleged negligence, breach of contract, misrepresentation and concealment in the design and construction of a nuclear power plant were motivated by safety concerns and were therefore preempted by the AEA. On the other hand, the Court of Appeals for the Seventh Circuit has apparently taken a different approach (in City ofWest Chicago v. Kerr-McGee), holding that a public nuisance complaint against Kerr-McGee Chemical Corporation by the City of West Chicago was not preempted by the AEA. Instead, it decided that the allegations pertaining to dangerous conditions (such as open pits filled with chemicals and refuse, holes in floors, and fallen roofing) were attempts by the city to regulate non-radiation hazards and therefore were permissible. This finding was made even though the operation of the factory in producing compounds from radioactive ores meant that the alleged dangerous conditions necessarily created radiation hazards.
While these two cases fail to provide any clear answer to the question of what level of inquiry courts will make into a legislature's (or plaintiff's) motives, they do illustrate one important element in judicial decision making — the wording of the complaint. The City of West Chicago carefully avoided mention of radiologic hazards in its complaint, whereas Suffolk County's complaint referred to potentially dangerous radiologic effects arising from Long Island Lighting's alleged actions.
A brief description of other recent AEA preemption holdings may be useful in determining whether state and local transportation requirements for nuclear waste will be preempted. Generally, courts will hold that local regulations are preempted if they fall within the totally occupied field of nuclear safety concerns, or if they fall within an area expressly reserved to the NRC in AEA § 2021.
A number of cases have held that state or local requirements are preempted under the safety rationale. In Northern States Power Co. v.Minnesota, the court preempted state conditions imposed in a waste disposal permit regulating the level of radioactive discharges and requiring monitoring programs for the detection of such releases. PublicInterest Research Group of New Jersey v. State Department of EnvironmentalProtection, involved a finding by the New Jersey court that the State Commissioner had no power under a state act to make an independent judgment as to the ability of a planned nuclear energy facility to protect against radiation hazards. In United Nuclear Corporation v. Cannon,
the AEA was found to preempt a state requirement requiring a nuclear power company to post a 20-year bond to cover any costs expended by the state to decontaminate areas surrounding its nuclear processing facilities. On the other hand, in South Dakota Public Utilities Commission v. FERC, the Wisconsin Public Service Commission's decision to deny a construction permit for a nuclear power plant was held not to be barred by the AEA. The court reasoned that the Commission's denial turned not on safety factors, but was prompted by the lack of demonstrated need for the nuclear plant, significant economic disincentives, and the superiority of alternative means of generation.
The second rationale commonly used for preemption — that the regulation falls within an area reserved to the NRC — received support inPGE. There, the Supreme Court clearly stated that it would be impermissible for a state to attempt to regulate the construction or operation of a nuclear power plant, even for nonsafety concerns. Several other cases are in accord with PGE in this regard. In UnitedStates of America and Trustees of Columbia University v. City of NewYork, the Court of Appeals held that a city licensing requirement for a nuclear reactor was preempted when the license pertained to health and safety. And in Suffolk County v. Long Island Lighting Company, the county's attempt to obtain a court order for an inspection of a nuclear power plant under construction was held preempted because the inspection of nuclear plants is within the reserved area of construction and operation of nuclear facilities. Trosten and Anacarrow argue that the legislative history of § 2021 of the AEA indicates that transport of nuclear waste was reserved to the NRC as part of its exclusive power over the "construction and operation of production and utilization facilities." This theory has not yet been tested in court however, and therefore has no predictive value.
In summary, state and local regulation of nuclear waste transport will be preempted under the AEA if it is characterized by the court as being an attempt at nuclear safety regulation. Such regulation may also be preempted if it conflicts with the promotion of atomic energy, although the Supreme Court appears reluctant to find state law preempted on this basis. Moreover, the AEA probably preempts state and local regulations pertaining to physical security of materials over which NRC has regulatory authority, prenotification to states regarding shipments of certain types of nuclear waste and spent nuclear fuel, and packaging of materials for which NRC sets packaging standards. Finally, state and local regulations will be preempted if they are found to be regulations made within the explicitly reserved powers identified in § 2021 of the AEA.
Preemption Under the Hazardous Materials Transportation Act
The Hazardous Materials Transportation Act (HMTA) authorizes the Secretary of Transportation to issue "regulations for the safe transportation in commerce of hazardous materials". These regulations (hereinafter referred to as HMRs) are applicable to any person
ATTACHMENT B
The vehicle owner shall retain the certificate for at least 1 year after withdrawal of the certification.
(49 U.S.C. § 1803, 1804, 1808; 49 CFR 1.53, App. A to Part 1)
[29 FR 18795, Dec. 29, 1964. Redesignated at32 FR 5606, Apr. 5, 1967]
EDITORIAL NOTE: For Federal Register citations affecting § 177.824, see the List of CFR Sections Affected appearing in the Finding Aids section of this volume.
§ 177.825 Routing and training requirements for radioactive materials.
(a) The carrier shall ensure that any motor vehicle which contains a radioactive material for which placarding is required is operated on routes that minimize radiological risk. The carrier shall consider available information on accident rates, transit time, population density and activities, time of day and day of week during which transportation will occur. In performance of this requirement the carrier shall tell the driver that the motor vehicle contains radioactive materials and shall indicate the general route to be taken. This requirement does not apply when:
(1) There is only one practicable highway route available, considering operating necessity and safety, or
(2) The motor vehicle is operated on a preferred highway under conditions described in paragraph (b) of this section.
(b) Unless otherwise permitted by this section, a carrier and any person who operates a motor vehicle containing a package of highway route controlled quantity radioactive materials as defined in § 173.403(1) of this subchapter shall ensure that the vehicle operates over preferred routes selected to reduce time in transit, except that an Interstate System bypass or beltway around a city shall be used when available.
(1) A preferred route consists of:
(i) An Interstate System highway for which an alternative route is not designated by a State routing agency as provided in this section, and
(ii) A State-designated route selected by a State routing agency (see § 171.8 of this subchapter) in accordance with the DOT "Guidelines for Selecting Preferred Highway Routes for Highway Route Controlled Quantity Shipments of Radioactive Materials".
(2) When a deviation from a preferred route is necessary (including emergency deviation, to the extent time permits), routes shall be selected in accordance with paragraph (a) of this section. A motor vehicle may deviate from a preferred route under any of the following circumstances:
(i) Emergency conditions that would make continued use of the preferred route unsafe.
(ii) To make necessary rest, fuel and vehicle repair stops.
(iii) To the extent necessary to pick up, deliver or transfer a highway route controlled quantity package of radioactive materials.
(c) A carrier (or his agent) who operates a motor vehicle which contains a package of highway route controlled quantity radioactive materials as defined in § 173.403(1) of this subchapter shall prepare a written route plan and supply a copy before departure to the motor vehicle driver and a copy to the shipper (before departure for exclusive use shipments, or otherwise within fifteen working days following departure). Any variation between the route plan and routes actually used, and the reason for it, shall be reported in an amendment to the route plan delivered to the shipper as soon as practicable but within 30 days following the deviation. The route plan shall contain:
(1) A statement of the origin and destination points, a route selected in compliance with this section, all planned stops, and estimated departure and arrival times; and
(2) Telephone numbers which will access emergency assistance in each State to be entered.
(d) No person may transport a package of highway route controlled quantity radioactive materials as defined in § 173.403(1) of this subchapter, on a public highway unless:
(1) The driver has received within the two preceding years, written training on:
(i) Requirements in Parts 172, 173, and 177 of this subchapter pertaining to the radioactive materials transported;
(ii) The properties and hazards of the radioactive materials being transported; and
(iii) Procedures to be followed in case of an accident or other emergency.
(2) The driver has in his immediate possession a certificate of training as evidence of training required by this section, and a copy is placed in his qualification file (see § 391.51 of this title), showing:
(i) The driver's name and operator's license number;
(ii) The dates training was provided;
(iii) The name and address of the person providing the training;
(iv) That the driver has been trained in the hazards and characteristics of highway route controlled quantity radioactive materials; and
(v) A statement by the person providing the training that information on the certificate is accurate.
(3) The driver has in his immediate possession the route plan required by paragraph (c) of this section and operates the motor vehicle in accordance with the route plan.
(e) A person may transport irradiated reactor fuel only in compliance with a plan if required under § 173.22(c) of this subchapter that will ensure the physical security of the material. Variation for security purposes from the requirements of this section is permitted so far as necessary to meet the requirements imposed under such a plan, or otherwise imposed by the U.S. Nuclear Regulatory Commission in 10 CFR Part 73.
(49 U.S.C. § 1803, 1804, 1808; 49 CFR 1.53, App. A to Part 1)
[Amdt. 177-52, 46 FR 5316, Jan. 19, 1981, as amended by Amdt 177-57, 48 FR 10247, Mar. 10, 1983; Amdt. 177-58, 48 FR 17094, Apr. 21, 1983; Amdt. 177-68, 51 FR 5975, Feb. 18, 1986]
§ 177.826 Carrier's registration statement; flammable cryogenic liquids.
(a) No person may transport a flammable cryogenic liquid in a portable tank or a cargo tank unless he has filed a registration statement by certified mail, return receipt requested, with the Director, OHMT, RSPA in accordance with paragraphs (b), (c) and (d) of this section.
(b) The registration statement must contain the following information:
(1) The carrier's name and principal place of business.
(2) Locations where cargo tanks used to transport flammable cryogenic liquids are domiciled.
(3) The serial number or vehicle identification number of each cargo tank used by the carrier to transport flammable cryogenic liquids, and the name of each flammable cryogenic liquid transported in each cargo tank.
(c) The registration statement must be filed:
(1) Initially between January 1 and February 28, 1985 (this initial statement is only required to contain information regarding operations that took place during the 90 days prior to the date of the statement); and
(2) Subsequently, between January 1 and February 28 of each odd numbered year after 1985.
(d) For equipment obtained or operations begun between the two-year filing intervals specified in paragraph (c) of this section, the information must be provided on the registration statement filed during the next required filing period.
(Approved by the Office of Management and Budget under control number 2137-0541)
(49 U.S.C. § 1803, 1804, 1808; 49 CFR 1.53, App. A to Part 1)
[Amdt. 177-60, 48 FR 27700, 27713, June 16, 1983; 48 FR 50442, Nov. 1, 1983]
Subpart B — Loading and Unloading
NOTE: For prohibited loading and storage of hazardous materials, see § 177.848.
§ 177.834 General requirements.
(a) Packages secured in a vehicle.
Any tank, barrel, drum, cylinder, or other packaging, not permanently attached to a motor vehicle, which contains any flammable liquid, compressed gas, corrosive material, poisonous material, or radioactive material must be secured against movement within the vehicle on which it is being transported, under conditions normally incident to transportation.
(b) No hazardous materials on poletrailers. No hazardous materials may
ATTACHMENT C
EDITORIAL NOTE: For Federal Register citations affecting § 177.870 see the List of CFR Sections Affected appearing in the Finding Aids section of this volume.
 APPENDIX A — RELATIONSHIP BETWEEN ROUTING REQUIREMENTS IN PART 177 WITH STATE AND LOCAL REQUIREMENTS
I. Purpose. This appendix is a statement of the Department of Transportation policy regarding the relationship of State and local rules with Federal rules in Part 177 of this subchapter for routing motor carriers transporting radioactive materials. The purpose of this appendix is to advise a State or local government how it can exercise authority over motor carriers under its own laws in a manner that the Department of Transportation considers to be consistent with rules in Part 177 (see 49 U.S.C. § 1811(a)). This appendix and Part 177 do not delegate Federal authority to regulate motor carriers.
II. Definition. "Routing rule" means any action which effectively redirects or otherwise significantly restricts or delays the movement by public highway of motor vehicles containing hazardous materials, and which applies because of the hazardous nature of the cargo. Permits, fees and similar requirements are included if they have such effects. Traffic controls are not included if they are not based on the nature of the cargo, such as truck routes based on vehicles weight or size, nor are emergency measures.
III. Highway route controlled quantity radioactivematerials. A. State routing rules.
A State routing rule which applies to highway route controlled quantity radioactive materials is inconsistent with Part 177 if:
1. It prohibits transportation of highway route controlled quantity radioactive materials by highway between any two points without providing an alternate route for the duration of the prohibition; or
2. It does not meet all of the following criteria:
(a) The rule is established by a State routing agency as defined in § 171.8 of this subchapter;
(b) The rule is based on a comparative radiological risk assessment process at least as sensitive as that outlined in the "DOT Guidelines";
(c) The rule is based on evaluation of radiological risk wherever it may occur, and on a solicitation and substantive consideration of views from each affected jurisdiction, including local jurisdictions and other States; and
(d) The rule ensures reasonable continuity of routes between jurisdictions.
B. Local routing rules. A local routing rule that applies to highway route controlled quantity radioactive materials is inconsistent with this Part if it prohibits or otherwise affects transportation on routes or at locations either:
1. Authorized by Part 177, or
2. Authorized by a State routing agency in a manner consistent with Part 177.
IV. Quantities of radioactive materials requiredto be placarded. A State or local routing rule that applies to a radioactive material (other than a highway route controlled quantity radioactive material), for which Part 177 requires placarding, is inconsistent with Part 177 unless it is identical to § 177.825(a) of this part.
V. Radioactive materials for which placardingis not required. A State or local routing rule that applies to a radioactive material for which Part 172 does not require placarding is inconsistent with this part.
VI. Other related State and local rules. A State or local transportation rule is inconsistent with Part 177 if it:
A. Conflicts with physical security requirements which the Nuclear Regulatory Commission has established in10 CFR Part 73 or requirements approved by the Department of Transportation under § 173.22(c) of this subchapter;
B. Requires additional or special personnel, equipment, or escort;
C. Requires additional or different shipping paper entries, placards, or other hazard warning devices;
D. Requires filing route plans or other documents containing information that is specific to individual shipments;
E. Requires prenotification;
F. Requires accident or incident reporting other than as immediately necessary for emergency assistance; or
G. Unnecessarily delays transportation.
(49 U.S.C. § 1803, 1804, 1808, 49 CFR 1.53, App. A to Part 1)
[Amdt. 177-52, 46 FR 5317, Jan. 19, 1981, as amended by Amdt. 177-57, 48 FR 10247, Mar. 10, 1983; Amdt. 177-58, 48 FR 17094, Apr. 21, 1983]
ATTACHMENT D
INCONSISTENCY RULINGS UNDER 49 U.S.C. § 1811(a)
 IR-1 NYC/Brookhaven 43 FR 16954 Apr. 20, 1978 IR-2 Rhode Island 44 FR 75566 Dec. 20, 1979 Appeal 45 FR 71881 Oct. 30, 1980 IR-3 Boston, MA 46 FR 18918 Mar. 26, 1981 Appeal 47 FR 18457 Apr. 29, 1982 IR-4 Washington State 47 FR 1231 Jan. 11, 1982 IR-5 NYC/Ritter 47 FR 51991 Nov. 18, 1982 IR-6 Covington, KY 48 FR 760 Jan. 6, 1983
Nine-pack: PREAMBLE 49 FR 46632 Nov. 27, 1984 IR-7 New York State 49 FR 46635 Nov. 27, 1984 IR-8 Michigan 49 FR 46637 Nov. 29, 1984 IR-9 Governor of Vermont 49 FR 46644 Nov. 27, 1984 IR-10 New York State Thruway 49 FR 46645 Nov. 27, 1984 Correction 50 FR 9939 Mar. 12, 1985 IR-11 Ogdensburg Bridge 49 FR 46647 Nov. 27, 1984 IR-12 St. Lawrence County, N Y 49 FR 46650 Nov. 27, 1984 IR-13 Thousand Islands Bridge 49 FR 46653 Nov. 27, 1984 IR-14 Jefferson County, N Y 49 FR 46656 Nov. 27, 1984 IR-15 Vermont Agency of Trans. 49 FR 46660 Nov. 27, 1984
 IR-16 Tucson, AZ 50 FR 20872 May 20, 1985 IR-17 State of Illinois 51 FR 20925 June 9, 1986
 APPENDIX C
 DOT Inconsistency Rulings and Appeals
The Materials Transportation Bureau of DOT has issued 16 inconsistency rulings dealing with state or local regulations on hazardous materials.
Two tests are used to determine inconsistency. First, the "obstacle" test helps decide if the nonfederal regulation presents an obstacle to accomplishing the purposes of HMTA and its subsequent regulations. Second, the "dual compliance" test determines if it is possible to comply with both federal and nonfederal requirements.
The rulings concerned (1) New York City's ban on the transport of spent fuel and large quantity radioactive materials; (2) Rhode Island's regulations on shipments of liquefied propane gas; (3) Boston's rules governing certain hazardous materials within the city; (4) Washington state's rule requiring red or red-bordered shipping papers; (5) New York City's administrative code governing definition of certain hazardous materials; (6) Covington's (Kentucky) rule requiring advance notice of shipments of all hazardous materials going through its jurisdiction (no inconsistencies were found in rulings (7) and (9) [letters from the governors of Vermont and New York to the Nuclear Assurance Corporation]); (8) Michigan State Fire Safety Board and Department of Public Health; (10) New York State Thruway Authority; (11) Ogdensburg (New York) Bridge and Port Authority; (12) St. Lawrence County (New York); (13) Thousand Islands Bridge Authority (New York); (14) Jefferson County (New York); (15) Vermont Agency of Transportation; and (16) Tucson, Arizona's ban on transportation of radioactive materials through the city. Rulings 8-15 had multiple areas in common that were found inconsistent, i.e.:
* Definitions of radioactive materials;
* Prenotification/permit requirements;
* Additional personnel, equipment, escorts, etc.;
* Additional packaging/container requirements; and
* Insurance requirements.
New York City's ban on spent fuel as well as the Rhode Island and the Boston rulings were all appealed. DOT was upheld in each appeal. In each case, the federal government had emphasized (1) uniformity of regulations (to prevent confusion about regulations — a safety hazard when it occurs), (2) overall safety — but not at the expense of another jurisdiction (a matter of routing), and (3) unimpeded traffic or the safety hazard created by unnecessary delays. These are the reasons for addressing the issues of hazard warnings, packaging, reporting requirements, hazardous materials definition questions, redundancy of state requirements, time-of-day bans, and routing bans. MTB sees uniformity and safety as two sides of the same coin.
DOT Inconsistency Rulings
Federal Register, April 20, 1978, Vol. 48, No. 77. DOT — Materials Transportation Bureau, New York City Health Code, Notice of Inconsistency Ruling.
Federal Register, December 20, 1979, Vol. 49, No. 246. DOT — State of Rhode Island — Rules and Regulations Governing the Transportation of Liquefied Natural Gas and Liquefied Propane Gas Intended To Be Used by a Public Utility.
Federal Register, March 26, 1981, Vol. 46, No. 58. DOT — City of Boston — Rules Governing Transportation of Certain Hazardous Materials by Highway Within the City.
Federal Register, January 11, 1982, Vol. 47, No. 6. Research and Special Programs Administration — State of Washington House Bill No. 1870 Governing Requirements for Red or Red-Bordered Shipping Papers for Hazardous Materials.
Federal Register, November 18, 1982, Vol. 47, No. 223. Inconsistency Ruling IR-5; City of New York Administrative Code Governing Definitions of Certain Hazardous Materials.
Federal Register, January 6, 1983, Vol. 48, No. 4. Inconsistency Ruling IR-6; City of Covington Ordinance Governing Transportation of Hazardous Materials by Rail, Barge, and Highway within the City.
Federal Register, November 27, 1984, Vol. 49, No. 229. Inconsistency Rulings IR-7 — IR-15.
Federal Register, May 20, 1985, Vol. 50, No. 97. Inconsistency Ruling IR-16; Tucson City Code Governing Transportation of Radioactive Materials.
Appeals to DOT Inconsistency Rulings
Federal Register, October 30, 1980, Vol. 45, No. 212, p. 71881. State of Rhode Island Rules and Regulations Governing the Transportation of Liquefied Natural Gas and Liquefied Propane Gas Intended To Be Used by a Public Utility. Inconsistency Ruling (IR-2); Notice of Decision on Appeal.
Federal Register, April 29, 1982, Vol. 47, No. 83, p. 18457. City of Boston Rules Governing Transportation of Certain Hazardous Materials by Highway Within the City.
The City of New York v. The United States Department of Transportation,715 F.2d 732 (2d Cir., 1983).
The City of New York v. The United States Department of Transportation,104 S. Ct. 1403.
Non-Preemption Determination
Department of Transportation, Research and Special Programs Administration, [Docket No. NPDA-2] City of New York; Hazardous Materials Transportation; Non-Preemption Determination No. NPD-1, September 9, 1985.
non emergencies involving their release. Effective dissemination of that knowledge becomes a challenging task of organization and one that will always involve state government. This report is designed to acquaint state legislators with the issues and problems that may involve state legislation relating to radioactive materials accident response.
ATTACHMENT F
GOVERNMENT REGULATION
Federal
The U.S. Department of Transportation's (DOT) Code of Federal Regulations, 49 CFR, regulates all modes of transportation of radioactive materials. Highway carriers are covered in §§ 350-399, rail carriers in §§ 200-268. The U.S. Nuclear Regulatory Commission's (NRC) regulations on radioactive materials transportation are in 10 CFR §§ 71, 73, and 75. The Federal Aviation Administration (FAA) covers air carriers in 14 CFR §§ 121 and 135. The U.S. Coast Guard (USCG) regulates water carriers in 46 CFR §§ 146-148 and in 33 CFR § 126. The U.S. Postal Service regulations for postal shippers and carriers are in the Domestic Mail Manual and Publication 6, Radioactive Materials (9-83). The U.S. Environmental Protection Agency (EPA) regulations are in 40 CFR. The EPA and DOT coregulate some radioactive materials, which are identified by the letter "E" in the first column of DOT's hazardous materials table in49 CFR § 172.101
(11-84). The U.S. Department of Energy (DOE) is a quasi-regulator in that it requires its contractors to obey all federal regulations.
In 49 CFR, radioactive materials are treated as a subset of hazardous materials. The regulations establish what kinds of events must be reported, what kinds of packages must be used, what labels and placards must be affixed to the packages and transport vehicle, and what the external dose limits are for packages and transport. Routing criteria also are prescribed for highway route controlled quantities in Type B packaging, including spent fuel.
The transportation sections of 10 CFR focus on fissile radioactive materials and on quantities of RAM (except low specific activity (LSA) materials) exceeding Type A limits. NRC imposes physical security requirements on its licensees for spent fuel and highway route controlled quantities of radioactive materials while in transit. NRC also defines the circumstances that would trigger the need for advance notification of certain kinds of shipments of radioactive materials (10 CFR §§ 71.5a,73.27) (1-85).
Appendix A contains the federal laws relating to radiological emergencies.
State and Local
State and local governments bear the preponderance of the burden of preparation for emergency response. State offices must:1
* Develop and distribute an emergency response plan;
* Designate the response teams;
* Coordinate with federal, local, and other state agencies;
 * Negotiate interstate agreements for accidents close to a border; and
* Ensure that operational procedures are in effect.
Local governments must:
* Attend to the immediate emergency;
* Notify appropriate authorities; and
* Take containment action.